UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

ROBERT SHERMAN,

      Plaintiff,

vs.

FIVESKY, LLC, FIVESKY TECHNOLOGY
SERVICES, LLC and REZA
POURKHOMAMI

      Defendants.

Civil Action No.: 1:19-cv-08015 (DAB)

**Oral Argument Requested**

---

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

---

**BRACH EICHLER, L.L.C.**
101 Eisenhower Parkway
Roseland, New Jersey  07068
Telephone:  (973) 228-5700
*Attorneys for Defendants*

Of Counsel and On the Brief:
    Lucas A. Markowitz, Esq.

## <u>TABLE OF CONTENTS</u>

PRELMINARY STATEMENT ........................................................................................... 1

LEGAL ARGUMENT ..................................................................................................... 2

    I.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS FAIL TO STATE A CLAIM ............................................................................................ 2

        A.    Plaintiff Cannot Assert Hostile Work Environment Claims On Behalf of Employees in a Protected Class of Which He is not a Member .............................................................................................. 2

        B.    Plaintiff's Sexual Harassment Claims Fail Because He Has Not Met the  Oncale Test to Demonstrate Defendants' Conduct Was Based on his Gender ................................................................................ 4

        C.    Plaintiff's Gender and Religion Claims Fail Because Defendants' Conduct Was Neither Severe Nor Pervasive ................................. 5

            1.    Plaintiff Complains of Only a Few Isolated Incidents of Arguably Gender Based Comments ................................... 5

            2.    Plaintiff Complains of Only a Few Isolated Incidents of Religious Based Comments ............................................ 6

    II.    PLAINTIFF HAS NOT STATED A CLAIM FOR EITHER GENDER OR RELIGIOUS DISCRIMINATION ........................................................ 8

    III.    PLAINTIFF HAS NOT STATED A RETALIATION CLAIM ............................ 9

CONCLUSION .............................................................................................................. 11

BE:10844316.2/FIV022-276012

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anderson v. Davis Polk & Wardwell LLP,
   850 F. Supp. 2d 392 (S.D.N.Y. 2012)..........................................................................6

Argeropoulos v. Exide Tech.,
   2009 WL 2132443 (E.D.N.Y. 2009)...........................................................................7

Benette v. Cinemark U.S.A., Inc.,
   295 F. Supp. 2d 243 (W.D.N.Y. 2003).......................................................................8

Brennan v. Metropolitan Opera Ass'n, Inc.,
   192 F.3d 310 (2d Cir. 1999).......................................................................................8

Brown v Henderson,
   115 F Supp 2d 445 (S.D.N.Y. 2000)...........................................................................8

Christoforou v. Ryder Truck Rental Inc.,
   668 F. Supp. 294 (S.D.N.Y. 1982) .............................................................................6

Cobb v. Morningside at Home, Inc.,
   2009 WL 874612 (S.D.N.Y. Mar. 31, 2009) ..............................................................4

Curtis v. Airborne Freight Corp.,
   87 F. Supp. 2d 234 (S.D.N.Y. 2000)...........................................................................8

Donahue v. Asia TV USA Ltd.,
   208 F. Supp. 3d 505 (S.D.N.Y. 2016).........................................................................3

Lamar v. NYNE Serv. Co.,
   891 F. Supp. 184 (S.D.N.Y. 1995) .............................................................................6

Nakis v. Potter,
   422 F.Supp.2d 398 (S.D.N.Y. 2006)...........................................................................8

Oncale v. Sundowner Offshore Services, Inc.,
   523 U.S. 75 (1998).............................................................................................3, 4, 5

Shabat v. Blue Cross Blue Shield,
   925 F. Supp. 977 (W.D.N.Y. 1996)............................................................................7

Smith v. AVSC Int'l, Inc.,
   148 F. Supp. 2d 302 (S.D.N.Y. 2001).........................................................................3

BE:10844316.2/FIV022-276012

Wells-Williams v. Kingsboro Psychiatric Center,
    2007 WL 1011545 (E.D.N.Y. Mar. 30, 2007) ........................................................................8

Weston v. Optima Comm. Sys., Inc.,
    2009 WL 3200653 (S.D.N.Y. Oct. 7, 2009) .........................................................................6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................10

BE:10844316.2/FIV022-276012

Defendants Fivesky, LLC, Fivesky Technology Services, LLC and Reza Pourkhomami, (collectively, "Defendants"), submit this reply memorandum of law in further support of their motion to dismiss with prejudice, Plaintiff Robert Sherman's ("Sherman") Amended Complaint (the "Complaint") for failure to state a claim.

## PRELMINARY STATEMENT

The number of paragraphs and number of pages of a particular Complaint is irrelevant. The content of those paragraphs and pages is. In this case, Plaintiff's paragraphs and pages, while numerous, fail to state legally plausible claims for relief. Plaintiff claims that Mr. Pourkhomami repeatedly used the n-word to refer to Evan Jackson. But Evan Jackson is not a plaintiff here. Plaintiff claims that Mr. Pourkhomami used the n-word when referring to an employee named "Levar." But Levar is not a party. Likewise, Plaintiff claims that Mr. Pourkhomami referred to several Canadian clients using the n-word. But Mr. Pourkhomami's Canadian clients are not parties either. Plaintiff is the only one in the caption, and the only relevant allegations in the Complaint are those involving him. And when the Court evaluates *those* allegations, the Complaint is dead on arrival.

Turning to the substance of the opposition, Plaintiff makes several arguments to resuscitate his fatally flawed Complaint, none of which are persuasive. *First*, Plaintiff argues that evidence of mistreatment of co-workers is relevant to Plaintiff's claims. But this is only true when the other co-workers are in the same protected class. Here, none were Caucasian, Jewish males. *Second*, Plaintiff argues that simply concluding that "defendant did something bad because I am a male," is sufficient to demonstrate that he was discriminated against because of his gender. But not all sexual conduct is necessarily driven by gender animus. And even with all favorable inferences, it is not here. *Third*, even accepting all of the allegations in the Complaint as true, Plaintiff's hostile work environment claims based upon his gender and religion fail, because the conduct was neither

1

severe nor pervasive.  *Fourth*, although Plaintiff claims that he can make out disparate treatment claims without demonstrating an adverse employment action, he cannot.  *Fifth*, Plaintiff cannot make out a retaliation complaint, because the offending conduct ceased after he actually complained and there was no retaliation.

For these reasons, and the reasons set forth in Defendants' moving papers, Plaintiff's Complaint should be dismissed for failure to state a claim.

## <u>LEGAL ARGUMENT</u>

### I.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS FAIL TO STATE A CLAIM

#### A.    Plaintiff Cannot Assert Hostile Work Environment Claims On Behalf of Employees in a Protected Class of Which He is not a Member

The opposition suggests that Plaintiff can plead a hostile work environment claim by incorporating allegations of the mistreatment of others. Since he is not a member of the same protected class of those mistreated, he cannot.

Plaintiff cites <u>Leibovitz v. New York City Transit Auth.</u>, for the proposition that "evidence of harassment directed at other co-workers can be relevant to an employee's own claim of [a] hostile work environment." 252 F.3d 179, 190 (2d Cir. 2001). However, in selectively splicing this snippet from the opinion, Plaintiff failed to appreciate the animating factor in <u>Leibovitz</u>—plaintiff was a member of the same protected class as her co-workers on whose behalf she complained. <u>See id.</u> (recognizing prudential standing lacking where "plaintiff asserted Title VII rights on behalf of a protected class of employees to which plaintiff did not belong.").

While Plaintiff's <u>Leibovitz</u> sound bite sounds superficially compelling, it does not apply here.  Plaintiff is neither African American, nor Asian, nor Polish, nor female. He is white and he is Jewish, but he makes no allegations of any offensive conduct directed toward other Jewish

BE:10844316.2/FIV022-276012

employees or other white employees.  He cannot rely on the supposed harassment of other groups to support his claims.

And while Plaintiff tries to bolster this argument by reference to <u>Cruz v. Coach Stores, Inc.</u>, his reliance is misplaced.  202 F.3d 560, 570 (2d Cir. 2000), <u>superseded on other grounds by N.Y.C. Local L. No. 85</u> (enacted 2005). Admittedly, <u>Cruz</u> did say that remarks "targeting members of other minorities ... may contribute to the overall hostility of the working environment for a minority employee."  However, <u>Cruz</u> does not support the argument that "discrimination against any member of a protected class is relevant to another's hostile work environment claim, regardless of the basis of the discrimination alleged." <u>See</u> <u>Donahue v. Asia TV USA Ltd.</u>, 208 F. Supp. 3d 505, 517 (S.D.N.Y. 2016) (explaining that while "discrimination against African-Americans may support a Hispanic woman's claim, . . . that does not mean that sexual harassment is relevant to . . . national origin and age discrimination.").  In the same vein, the court in <u>Smith v. AVSC Int'l, Inc.</u>, dismissed a hostile work environment claim by older white man predicated on alleged discriminatory comments about "female, Filipino, Egyptian, Jamaican, Indian, and Nigerian employees." <u>Smith v. AVSC Int'l, Inc.</u>, 148 F. Supp. 2d 302, 311 (S.D.N.Y. 2001). This case is no different, and the Court should follow <u>Smith</u>'s lead.

Since Plaintiff cannot use the mistreatment of his coworkers to state a hostile work environment claim, the Court must focus on the allegations concerning Plaintiff himself. Scrutiny of these allegation makes clear that Plaintiff has not and cannot state a claim upon which relief may be granted.

BE:10844316.2/FIV022-276012

**B.    Plaintiff's Sexual Harassment Claims Fail Because He Has Not Met the <u>Oncale</u> Test to Demonstrate Defendants' Conduct Was Based on his Gender**

The Supreme Court built three doors through which a man can sue another man for sexual harassment: (1) by providing "credible evidence that the harasser was homosexual" (and therefore motivated by sexual desire); (2) by demonstrating that "the harasser is motivated by general hostility to the presence of [men] in the workplace"; or (3) by "offer[ing] direct comparative evidence" showing that the alleged harasser treated members of the sexes differently in a mixed-sex workplace. <u>Oncale v. Sundowner Offshore Services, Inc.</u>,523 U.S. 75, 80-81 (1998).  Plaintiff has apparently chosen only door number three, but he has not crossed the threshold. A look at the case law tells us why.

For example, in the recently decided <u>Nachmany v. FXCM, Inc.</u>, the late Judge Deborah Batts dismissed a male-on-male sexual harassment complaint where the plaintiff alleged four instances of alleged sexual harassment: "1) the posting of a derogatory message on a centrally-located white board; 2) [the] changing of Plaintiff's computer background to an image of a 'naked male'; 3) the drawing onto a photograph of Plaintiff an offensive sexual image; and 4) that Plaintiff was 'exposed to and often berated with' phrases and depictions of very offensive slang terms." 2020 WL 178413, at *1 (S.D.N.Y. Jan. 9, 2020). Judge Batts explained that "[t]he Complaint does not indicate that men at FXCM were exposed to disadvantageous terms of employment, as compared to women."  The same is true here.

While Plaintiff concludes that Plaintiff was exposed to several instances of nude pictures of Mr. Pourkhomami's girlfriends or co-workers "because he is a male," he ignores the fact that the Complaint also reveals that Mr. Pourkhomami and these women voluntarily exchanged these same photos and engaged in these same consensual sexual relationships. As a result, there is no evidence in the Complaint, direct or otherwise, to indicate that Plaintiff was treated less well than

- 4 -

his female cohorts. <u>See</u> <u>Cobb v. Morningside at Home, Inc.</u>, 2009 WL 874612, at *9 (S.D.N.Y. Mar. 31, 2009) ("Because the touchstone of the Title VII inquiry is discrimination, and [defendants'] comments were equally offensive to both men and women, [p]laintiff's hostile work environment claim must fail."); <u>Oncale</u>, 523 U.S. 75, 80 (holding critical issue under Title VII is whether members of protected class are exposed to disadvantageous terms of employment to which members outside that class are not exposed) In other words, Mr. Pourkhomami did not "discriminate" against Plaintiff because he is male, because there is no allegation in the Complaint that Mr. Pourkhomami favored one sex over the other. Accordingly, Plaintiff's claims for sexual harassment should be dismissed.

### C.    Plaintiff's Gender and Religion Claims Fail Because Defendants' Conduct Was Neither Severe Nor Pervasive

#### 1.    Plaintiff Complains of Only a Few Isolated Incidents of Arguably Gender Based Comments

Plaintiff hopes the Court will not closely scrutinize his Complaint, because if it does, the Court will notice that the supposed gender-based conduct upon which Plaintiff relies was neither severe nor pervasive. Defendants employed Plaintiff for almost two years. *See First Amended Complaint ("FAC"), ¶¶ 2, 24.* Over the course of two years, Plaintiff claims that on one occasion in Las Vegas (January 2018), he was asked if he wanted "prostitutes" and saw what he believed to be blood stains from a consensual sexual encounter Mr. Pourkhomami had the night before. *FAC, ¶ 48, 52-54.* <u>That is one.</u>  Eight months later (August 2018), Mr. Pourkhomami allegedly showed Plaintiff nude pictures of himself and his girlfriend, and a nude picture Plaintiff's co-worker had sent Mr. Pourkhomami. *FAC, ¶ 75-78.* <u>That is two.</u> Even if the Court considers the vague conclusory allegation that Mr. Pourkhomami discussed his genitals one additional time on February 13, 2019, that only makes three sporadic incidents, each about eight months apart. *FAC,*

¶ 124.[1] While Plaintiff would like to slice and dice these three incidents into more, the fact remains that the Complaint alleges they occurred on three specific dates, eight months apart each, with the last incident occurring in February 2019. As a matter of law, those comments were neither severe nor pervasive. See Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392, 404-05 (S.D.N.Y. 2012) (finding that allegations of a supervisor's behavior of repeatedly coming by the plaintiff's cubicle "and plac[ing] her vagina literally on [the plaintiff['s]] left shoulder or inches from [the plaintiff['s] face" were not severe or pervasive to establish a sexual harassment claim on a motion to dismiss); Lamar v. NYNE Serv. Co., 891 F. Supp. 184, 185 (S.D.N.Y. 1995) (finding that five incidents of an allegedly sexual nature over the course of approximately seventeen months were "too sporadic to constitute sexual harassment as a matter of law"); Christoforou v. Ryder Truck Rental Inc., 668 F. Supp. 294, 303 (S.D.N.Y. 1982) (holding that three incidents of sexual harassment over the course of approximately one year and a half lacked sufficient frequency to represent a "hostile work environment").

Since this Court has found, as a matter of law, that much more severe and pervasive conduct is necessary to state a sexual harassment claim, Plaintiff's claims must be dismissed.

### 2.    Plaintiff Complains of Only a Few Isolated Incidents of Religious Based Comments

Setting aside Plaintiff's conclusory use of the words "repeatedly" and "often," Plaintiff only complains of several isolated incidents of religious based comments. Initially, Plaintiff claimed in his EEOC Charge that "on or about" September 6, 2018, Defendant Pourkhomami referred to Plaintiff as a "cheap Jew." *See ECF 14-2, at p. 15*. While this specific date mysteriously

---

[1] Plaintiff alleges that on the same date in February 2019, Mr. Pourkhomami expressed excitement about Plaintiff's initiative in contacting a client—remarking that Plaintiff's actions "gave him a boner." This remark conveyed excitement, not sexual arousal or desire.

morphed into "multiple occasions," by the time the Complaint was filed, our courts treat conclusory allegations prefaced with the "multiple occasions" as isolated incidents. See Weston v. Optima Comm. Sys., Inc., 2009 WL 3200653 at * 3 (S.D.N.Y. Oct. 7, 2009) (granting motion to dismiss for lack of facial plausibility where complaint "contains no facts regarding the frequency or severity of the offensive behavior or the length of time [plaintiff] had to endure it"); Argeropoulos v. Exide Tech., 2009 WL 2132443, *6 (E.D.N.Y. 2009) (non-specific allegations of frequency—that the conduct occurred on a "daily and continuous basis"—are no longer sufficient to survive a motion to dismiss). The only other reference to his religion comes months later when Defendant Pourkhomami allegedly said he "couldn't believe he was working on this proposal with a fuckin Jew and a Polack." *Complaint*, *¶ 142*. These two isolated incidents are not enough to make out a hostile work environment claim based upon religion.

In Shabat v. Blue Cross Blue Shield, 925 F. Supp. 977 (W.D.N.Y. 1996), aff'd sub nom Shabat v. Billotti, 108 F.3d 1370 (2d Cir. 1997), plaintiff's claims were dismissed despite comments from coworkers and supervisors asking the Jewish Israeli plaintiff whether people from the Mideast beat their wives; asking why he could not accept Jesus Christ as the Messiah since Jesus was also Jewish; stating that there was no such holiday as Yom Kippur; asking plaintiff who he had killed to make "matzah cake," an "allusion to a once-common myth spread by anti-Semites that Jews killed children and used their blood when baking matzah for Passover;" and rebuking plaintiff for inviting coworkers to the "barbaric ceremony" of his son's circumcision. Shabat v. Blue Cross, 925 F. Supp. at 982. In affirming the trial court's decision, the Second Circuit found "particularly significant the facts that...the incidents perceived by plaintiff to evidence anti-Semitic and anti-Israeli animus were relatively few in number (roughly nine), and they occurred over a three and one-half year period . . . ." 108 F.3d 1370.

Since Plaintiff's allegations fall well short of those the Second Circuit rejected as insufficient in <u>Shabat</u>, his religious based hostile work environment claims should be dismissed.

## II.    PLAINTIFF HAS NOT STATED A CLAIM FOR EITHER GENDER OR RELIGIOUS DISCRIMINATION

Plaintiff's disparate treatment claims fail for a variety of reasons. *First*, Plaintiff's claim for constructive discharge must be dismissed because it relies on an unactionable hostile work environment claim. <u>Nakis v. Potter</u>, 422 F.Supp.2d 398, 412 (S.D.N.Y. 2006) ("without an actionable hostile environment claim, [a] plaintiff's constructive discharge claim must also fail."). And if the constructive discharge claim must be dismissed, so must the discrimination claims, because Plaintiff relies upon the constructive discharge claim to meet the adverse employment action element.

*Second,* the Complaint, if believed, makes clear that Mr. Pourkhomami treated his employees similarly *i.e.*, he was an equal opportunity harasser. And "[p]ut bluntly, the equal opportunity harasser escapes the purview of Title VII liability." <u>Brown v Henderson</u>, 115 F Supp 2d 445, 450 (S.D.N.Y. 2000) (citations and quotations omitted), <u>affd</u>, 257 F3d 246 (2d Cir 2001). In other words, although the discrimination laws "protect[] employees from improper discriminatory intimidation[,] it does not reach so far as to protect [employees] from undiscriminating intimidation by bullish and abusive supervisors." <u>Curtis v. Airborne Freight Corp.</u>, 87 F. Supp. 2d 234, 250 (S.D.N.Y. 2000); <u>Brennan v. Metropolitan Opera Ass'n, Inc.</u>, 192 F.3d 310, 318 (2d Cir. 1999) ("an environment which is equally harsh for both men and women... does not constitute a hostile working environment under the civil rights statutes"); <u>Benette v. Cinemark U.S.A., Inc.</u>, 295 F. Supp. 2d 243, 250 (W.D.N.Y. 2003) ("The nation's workplace is most likely populated with abusive, banal, profane and vulgar supervisors ... [who] use insensitive, profane and vulgar language toward employees[,]" but such conduct is "insufficient to make out a

claim for ... hostile work environment[.]"); <u>Wells-Williams v. Kingsboro Psychiatric Center</u>, 2007 WL 1011545, at *4 (E.D.N.Y. Mar. 30, 2007) (dismissing claims where "the work environment was equally unprofessional for both men and women").

Since Plaintiff cannot make out a hostile work environment claim, he cannot make out a constructive discharge claim. And since he cannot make out a constructive discharge claim, he cannot make out a disparate treatment claim. But even if he could, because the Complaint alleges (falsely) that Mr. Pourkhomami treated employees of all races, genders and religions poorly, Plaintiff was not singled out for disparate treatment based on his status in any protected category.

### III.    PLAINTIFF HAS NOT STATED A RETALIATION CLAIM

The facts here do not support a retaliation claim, because an actual analysis of the Complaint—removing the bluster and claims on behalf of everyone but the Plaintiff—reveals that Defendants took no action against Plaintiff.  Instead, the Complaint reveals that Mr. Pourkhomami actually ceased the supposed offending conduct after Plaintiff actually complained. Starting with Plaintiff's Complaints about his religion, the Complaint fails to allege that he complained when Defendant Pourkhomami allegedly called him a "cheap Jew," on or about September 6, 2018. *FAC, ¶¶ 74-79*. While Plaintiff does allege that he was "deeply offended" and "bewildered," he unquestionably did not complain. Months later on February 28, 2019, Plaintiff alleges that Defendant Pourkhomami said he "couldn't believe he was working on this proposal with a fuckin Jew and a Polack." *Id., ¶ 124*. After this remark, Plaintiff alleges that "after enduring months of discriminatory conduct, Plaintiff immediately objected . . . stating [Defendant Pourkhomami] need[ed] to stop using that reference – fuckin Jew." *Id., ¶ 143*.[2] Initially, this allegation implies

---

[2] For purposes of this Motion, Defendants concede that Defendants knew he was engaged in protected activity when he complained about the second alleged "Jewish" comment.

that Plaintiff had not previously complained but, Plaintiff's response to this second comment likely constitutes protected activity. Nevertheless, Plaintiff has not alleged Mr. Pourkhomami took any subsequent adverse employment action. Indeed, after Plaintiff made this particular complaint, there is no allegation that Defendant Pourkhomami ever made another anti-Semitic remark again. *Id., ¶¶ 142-145*.

Again, Plaintiff only complains of two (or three) sporadic instances related to his gender. First, on January 7, 2018, Plaintiff alleges that Defendant Pourkhomami showed him blood stains from a previous night's consensual sexual encounter with a vendor. *FAC, ¶¶ 54-57*. However, just like the first alleged religious comment, Plaintiff failed to complain. Rather, he merely alleges he was "outraged that Defendant Pourkhomami shared the story with gross visual evidence. . . [and] immediately left the room and never returned." *Id., ¶¶ 57*. He did not complain. This does not suffice for protected activity. Likewise, in August 2018, Defendant Pourkhomami allegedly showed Plaintiff pictures of his genitals, nude pictures of his girlfriend and nude pictures he had exchanged with Plaintiff's female coworker. *Id., ¶¶ 76-78*. However, just like the first so-called gender-based encounter in Las Vegas, Plaintiff failed to complain. Rather, he merely alleges he "was made extremely uncomfortable." *Id., ¶ 79*. This does not suffice for protected activity. Lastly, Plaintiff alleges that in February of 2019, Mr. Pourkhomami made reference to his genitals. *Id., ¶ 125, 130*. But he did not complain this time either. Instead, Plaintiff "composed himself and ignored Pourkhomami's comment." *Id., ¶ 131*. This too does not suffice for protected activity. Since Plaintiff never engaged in protected activity regarding the comments made to *him*, his retaliation claims fail.

BE:10844316.2/FIV022-276012

## CONCLUSION

For all these reasons, Defendants Motion to Dismiss must be granted in its entirety pursuant to FED. R. CIV. P. 12(b)(6).

**BRACH EICHLER LLC**


*/s/ Lucas A. Markowitz*
Lucas A. Markowitz, Esq.

Dated:  February 7, 2020

- 11 -