UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                          :
ROBERT SHERMAN,                                           :
                                                          :
                                                          :
                                    Plaintiff,            :          19-cv-8015 (LJL)
                        -v-                               :
                                                          :          OPINION & ORDER
FIVESKY, LLC, FIVESKY TECHNOLOGY                          :
SERVICES, LLC, and REZA POURKHOMAMI,                      :
                                                          :
                                    Defendants.           :
                                                          :
---------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/31/2020__

LEWIS J. LIMAN, United States District Judge:

Defendants Fivesky, LLC ("Fivesky"), Fivesky Technology Services, LLC, and Reza Pourkhomami (collectively, "Defendants"), move pursuant to Fed. R. Civ. P. 13(a)(1) and (b) and 15(a)(2) to amend their answer with counterclaims. Dkt. No. 37. Plaintiff Robert Sherman ("Sherman") opposes the motion and cross-moves to amend its complaint to add additional claims for retaliation and wrongful termination. Dkt. No. 42.

For the reasons that follow, Defendants' motion is granted and Plaintiff's motion is denied.

## DISCUSSION

Federal Rule of Civil Procedure reads that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). In determining what constitutes prejudice, the court considers "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare

for trial; (ii) significantly delay the resolution of the dispute; or (ii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* "Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id.* (quoting *State Teachers Retir. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). "[T]he 'permissive standard' of Rule 15 'is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.'" *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam)).

"Where a party files a motion to amend after the pleading deadline set forth in the scheduling order has expired, however, Federal Rule of Civil Procedure 16(b) governs." *DeCastro v. City of New York*, 2020 WL 4932778, at *6 (S.D.N.Y. Aug. 24, 2020). A party must establish "good cause" to amend its pleadings. *See Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007). "To show good cause, a movant must demonstrate diligence before filing her motion, such that despite the movant's effort, the deadline to amend the pleadings could not have been reasonably met." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014). "[T]he good cause standard of Rule 16 is not satisfied when the proposed amendment rests on information that the party knew or should have known, in advance of the deadline." *DeCastro*, 2020 WL 4932778, at *7 (quoting *Youngers v. Virtus Inv. Partners Inc.*, 2017 WL l5991800, at *3 (S.D.N.Y. Dec. 4, 2017)).

Federal Rule of Civil Procedure 13(a) requires that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court

cannot acquire jurisdiction." Fed. R. Civ. P. 13(a).  Federal Rule of Civil Procedure 13(b)

provides: "A pleading may state as a counterclaim against an opposing party any claim that is not

compulsory." Fed. R. Civ. P. 13(b).

## I.       Defendants' Motion to Amend

Defendants seek leave to file and serve an amended answer to include counterclaims

against Plaintiff for: (1) breach of contract; (2) breach of the implied covenant of good faith and

fair dealing; (3) misappropriation of trade secrets under 18 U.S.C. § 1836 and New York

common law; and (4) unfair competition in violation of 15 U.S.C. § 1125(a) and New York

common law.  In essence and summary, the counterclaims allege that Plaintiff violated federal

and state law and breached three agreements with Defendants that imposed post-employment

restrictions: (1) the Confidentiality and Non-Disclosure Agreement; (2) the Agency Agreement;

and (3) the Agency Non-Compete Agreement (collectively, the "Agreements").  Defendants

allege that Plaintiff breached the Agreements by—within months of his exit from Fivesky—

going to work for a direct Fivesky competitor, Contemporary Computer Services, Inc. ("CCS"),

and using and disclosing Fivesky's trade secrets and confidential and proprietary information in

connection with his new employment.  Defendants' motion to amend its answer to assert

counterclaims is granted.

Defendants have established good cause for permitting an out-of-time amendment.

Specifically, they offer evidence that they were told early on in the litigation by Plaintiff's

counsel that Plaintiff was not working.  Dkt. No. 37-2 ("Markowitz Decl.") ¶ 6.[1]  Defendants'

counsel also declares that "[f]rom April 2019 until very recently, [he] checked Mr. Sherman's

---

[1] Plaintiff's counsel has submitted an email in which he denies that he ever told defense counsel
that Plaintiff was not working, Dkt. No. 43, Exs. C-D, but he conspicuously does not back up
that assertion with a sworn statement in his declaration to this Court.  The Court does not credit
Plaintiff's hearsay statements.

public LinkedIn profile repeatedly to investigate whether (1) he was mitigating his damages; and (2) whether he was violating his post-employment restrictions" and that "no subsequent position [was] listed after Fivesky." *Id.* ¶ 5.  In fact, after Defendants in April 2019—before this action was filed, but after Plaintiff resigned and filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC")—wrote Plaintiff's counsel and reminded him of Plaintiff's post-employment obligations, Plaintiff's counsel responded that they were an "issue for another day" and did not say a word about Plaintiff's employment with CCS.  Dkt. No. 47-1 ("Markowitz Reply Decl.") ¶¶ 11, 13.  On April 18, 2019, Plaintiff's counsel told Defendants' counsel that Plaintiff was not working.  *Id.* ¶ 14.  Defense counsel did not take Plaintiff's counsel's word for it.  Defendants retained an investigative firm that, as of May 2019, was unable to find evidence that Plaintiff was working.  *Id.* ¶¶ 15-16, 18-19; *see id.*, Ex. D.

Defendants' counsel further declares that he did not learn of Plaintiff's new employment until approximately June 25, 2020, when he reviewed Plaintiff's initial disclosures produced two days earlier and learned from an attached W-2 form that Plaintiff had a job with CCS (but not what it was that CCS did).  Markowitz Decl. ¶¶ 7-9.  Before then, discovery and service of initial disclosures had been stayed from the pendency of the case, through the Court's decision on the motion to dismiss on May 5, 2020, and until discovery deadlines were set at the initial pretrial conference on June 5, 2020.  Defendants did not necessarily have a need to investigate the potential of the counterclaims during that time period, as the complaint might be dismissed and thus eliminate further litigation between Plaintiff and Defendants.

Between June 25, 2020 and the deadline for the filing of an amendment on July 6, 2020, Defendants investigated CCS and whether Defendants had a viable counterclaim based on Plaintiff's new employment.  *Id.*  ¶¶ 9-10.  On July 7, 2020, the day after the deadline to amend,

Plaintiff filed a letter motion for an extension of time to amend the pleadings but gave no reason for the request.  Dkt. No. 28.  The Court denied that motion on July 16, 2020, stating that any request for amendment after the deadline shall set forth good cause why the amendment should be permitted and why the request could not have been made earlier.  Dkt. No. 35.  The instant motion to amend was filed on July 23, 2020, 17 days after the deadline for filing amendments and only one week after the Court's prior order requiring a showing of good cause.  That period of time is reasonable and reflects due diligence in the preparation of claims for litigation.

The Court rejects Plaintiff's argument that Defendants should have "raised . . . concerns about alleged counterclaims" or developed counterclaims during the pendency of the motion to dismiss or later on May 19, 2020, when Defendants filed an answer in response to the amended complaint.  Dkt. No. 44 at 1-2.  The Case Management Plan and Scheduling Order entered on June 5, 2020 gave Defendants until July 6, 2020 to file an amendment.  Dkt. No. 26.  There was no requirement that they raise their counterclaims before the deadline for amendment and before they learned of their viable counterclaims.

The Court also rejects Plaintiff's argument that Defendants exhibited "undue delay" or lack of good cause by spending the time period between June 25, 2020 and July 6, 2020 investigating and developing potential counterclaims.  Dkt. No. 44 at 8.  Fed. R. Civ. P. Rule 11 commands that an attorney may not file a pleading until after she is able to certify that to the best of her knowledge "formed after an inquiry reasonable under the circumstances" that the claims "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and that "the factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b).  It would have been concerning had defense counsel rushed to file a counterclaim on the first suspicion that Plaintiff was working for a competitor.

*See TNS Media Research, LLC v. TRA Global, Inc.*, 2012 WL 2052679, at *1 (S.D.N.Y. June 4, 2012) ("[I]t was only through discovery that [defendant] obtained the information necessary to assert affirmative counterclaims against those entities."); *Bridgeport Music, Inc. v. Universal Music Group, Inc.*, 248 F.R.D. 408, 414 (S.D.N.Y. 2008) (good cause for the delay where defendant "reasonably waited until it could inquire further into the" counterclaims "before moving to add" a new defendant); *see also Nesselrotte v. Allegheny Energy, Inc.*, 2007 WL 3147038, at *4 n.9 (W.D. Pa. Oct. 25, 2007).

Plaintiff's remaining arguments are meritless. Plaintiff will not be prejudiced by the amended counterclaims within the meaning of the Federal Rules. Plaintiff does not claim that the amendment is futile or that the counterclaims fail to state a claim for relief.[2] Contrary to Plaintiff's assertion, Defendants are not seeking to make Plaintiff's current employer a party to this litigation.

Moreover, while Plaintiff has asserted that addition of the counterclaims would require the expenditure of significant additional resources—for example, the witnesses Defendants would call to support their breach of contract claims are not the same as the witnesses Plaintiff would call to support his discrimination claims, Dkt. No. 44 at 9-10—the Second Circuit has stated that "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989); *see also Block*, 988 F.2d at 351. Were it otherwise, Rule 15's promise that leave to amend shall be freely granted would be

---

[2] There is an independent basis of federal jurisdiction over the counterclaims based on federal question jurisdiction and supplemental jurisdiction.

rendered illusory and courts would be constrained to reject all but those amendments that merely regurgitate the factual allegations of the original complaint but only under different labels.

Plaintiff admits "discovery has just commenced in this Action, only preliminary discovery exchanged and depositions have not been taken."  Dkt. No. 44 at 15.  Here, the only witnesses Defendants identifies as relevant to the breach of contract counterclaims, but not Plaintiff's discrimination claims, are Plaintiff's current employer and its employees.  Dkt. No. 47 at 10-12.  Leaving aside that those witnesses likely are relevant to Defendant's mitigation-of-damages defense, they do not constitute the significant additional discovery that would unduly delay resolution of Plaintiff's case or otherwise create prejudice.

## II.    Plaintiff's Motion to Amend

Plaintiff seeks leave to amend his complaint to include: (1) a retaliation claim for Defendants' late attempt to amend their answer, as well as Defendants' alleged bad faith conduct in serving a subpoena on Plaintiff's current employer; and (2) a wrongful termination claim.

### A.    Proposed Retaliation Claim

Plaintiff's first proposed amendment arises from Defendants' litigation-related conduct.

On July 21, 2020, defense counsel served a subpoena on Plaintiff's current employer, CCS, seeking testimony regarding, among other things, Plaintiff's pre-employments contacts and communications with CCS, his dates of employment and application with CCS, and his earnings, compensation and benefits at CCS, as well as communications with CCS relating to Defendants, information about CCS's business and clients, and any and all clients Plaintiffs solicited or brought to CCS.  Dkt. No. 44 at 2-3; Dkt. No. 43, Ex. B.  The subpoena also seeks documents regarding the same subjects.  Dkt. No. 43, Ex B.  Prior to serving the subpoena on CCS, on July 21, 2020, Defendants' counsel copied Plaintiff's counsel on an email to a process server directing that the subpoena be served.  *Id.*, Ex A.  Counsel for Plaintiff responded to the email

expressing his intent to move to quash the subpoena and asking that Defendants resolve the matter with Plaintiff or with the Court before the subpoena was served.  *Id.*  Defendants declined to withdraw the subpoena indicating that, in addition to evidence related to their defense of the discrimination case, the subpoena sought "discoverable information related to Defendants' potential counterclaims against Plaintiff for his violation of various post-employment restrictions contained in his contract with Defendants."  *Id.*  Defense counsel continued:

> Defendants do not intend to "harass" Mr. Sherman, but he did bring this case and he did make a variety of wildly salacious and demonstrably false allegations in several public filings now.  My clients are entitled to vigorously defend themselves. We did not want to be here, Mr. Sherman did.  In sum, Defendants will not withdraw the subpoena.

*Id.*  That same day, on July 21, 2020, Plaintiff filed a letter, seeking a conference with the Court to address the proposed subpoena and to quash it before it could be served.  Dkt. No. 36. Defendants served the subpoena that day, and Plaintiff moved to quash the now-served subpoena on July 28, 2020.  *See* Dkt. No. 39.  Two days after Plaintiff first moved to quash the subpoena, on July 23, 2020, Defendants filed the instant motion to amend their answer to add the counterclaims.  Plaintiff moved to amend the complaint to add retaliation and wrongful termination claims on August 6, 2020.  Dkt. No. 42.

Plaintiff asserts that Defendants' conduct in serving the subpoena and seeking to amend the answer were designed to be disruptive and cause hardship between Plaintiff and his current employer as retaliation for pursuing this discrimination claim.  Dkt. No. 44 at 16.  Plaintiff seeks to amend the complaint, to assert that the subpoena was "[w]ithout reasonable or justifiable basis, and with malicious intent and in retaliation for pursuing his discrimination claims," Dkt. No. 43, Ex. E ¶¶ 197-200, and "with the intent to unduly burden Plaintiff and his employer," *id.* ¶ 202, and "to cause harm to Plaintiff's relationship with his new employer," *id.* ¶ 203.  He

asserts that Defendants' "conduct was designed and calculated to dissuade Plaintiff and others from pursuing legal matters, specifically discrimination complaints, against Fivesky." *Id.* ¶ 218.

Title VII's antiretaliation provision forbids employer actions that "discriminate against" an employee because, among other reasons, she has "made a charge" in a Title VII proceeding. 42 U.S.C. § 2000e-3(a).  Former employees are "employees" for the purposes of Title VII's antiretaliation provisions; a "former employe[e] . . . may bring suit against his former employer for postemployment actions allegedly taken in retaliation" for protected activity.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339, 346 (1997).  To establish a claim of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Burlington N. & Santa Fez Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). "[T]he significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters."  *Id.* at 69.  However, retaliation is not limited to actions that "concern employment and the workplace"; "an employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace."  *Id.* at 63.  Materially adverse actions may include "actions injurious to *current* employment or the ability to secure *future* employment. . . . Thus, plaintiffs may be able to state a claim for retaliation, even though they are no longer employed by the defendant company, if, for example, the company 'blacklists' the former employee, wrongfully refuses to write a recommendation to prospective employers, or sullies the plaintiff's reputation." *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) (internal citations omitted).  A litigation, with the expense it costs to defend and the risk it can bring to reputation,

9

on its face, would appear to be an action that could be injurious to the ability to maintain current employment or secure future employment and an act that well might dissuade a reasonable worker from making a charge of discrimination.

At the same time, however, the Supreme Court has recognized that "[t]he right of access to the courts is . . . one aspect of the right to petition" the government for a redress of grievances secured by the First Amendment to the Constitution. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). "[T]he ability to lawfully prosecute even unsuccessful suits adds legitimacy to the court system as a designated alternative to force." *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 532 (2002). That right, though, does not extend to litigation that is "objectively baseless" and that is launched for an objectionable or retaliatory subjective motivation. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (2002); *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974) ("Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition."). Moreover, "[d]ue process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quoting *American Surety Co. v. Baldwin*, 287 U.S. 156, 168 (1932)). Finally, a plaintiff alleging retaliation in violation of Title VII must "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," and not merely a "substantial" or "motivating" factor. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348, 362 (2013).

Applying those principles, the Court concludes that the allegations related to the retaliation claim fail to state a claim for relief and thus denies the motion to amend the complaint to add the claim as futile. *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir.

2002) ("An amendment to a pleading is futile" and should be denied where "the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)"); *Hunt v. All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998) ("[I]t is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile."); *see also Metropolitan Transportation Authority v. James River Ins. Co.*, 2020 WL 5077250, at *4 (S.D.N.Y. Aug. 27, 2020) (denying leave to amend on grounds of futility).

First, neither the subpoena nor Defendants' counterclaims are objectively baseless. The subpoena seeks documents relevant to the reasons for Plaintiff's departure from Fivesky and to his mitigation of damages. Defendants are entitled to probe those issues as part of their defense. Although Plaintiff complains that Defendants did not wait until a court ruling on the motion to quash prior to serving the subpoena, nothing in Fed. R. Civ. P. 45(a)(4) required counsel to wait and, in any event, the service of the subpoena was "inseparable from the litigation of the claim" and thus "is a matter to be resolved pursuant to court rules, not by Title VII." *McKenzie v. Illinois Department of Transportation* 92 F.3d 473, 486 (7th Cir. 1996); *see also Steffes v. Stepan Co.*, 144 F.3d 1070, 1076 (7th Cir. 1998) (holding that phone call to plaintiff's current employer to verify her employment, which also revealed the existence of the action, did not give rise to retaliation and that "litigation tactics subject to supervision by the court cannot constitute independent grounds of liability").[3]

---

[3] Fed. R. Civ. P. 45(a)(4) requires that prior notice be served on each party before serving a subpoena commanding the production of materials or the inspection of premises before trial. However, "[t]he prior notice requirement is only applicable when the production or inspection is sought independent of deposition," not as here when the production of documents is sought in connection with a deposition. 9A Wright & Miller, Federal Practice and Procedure § 2457 (3d ed. 2020) (hereinafter, "Wright & Miller"); *see* Dkt. No. 43, Ex. B. Moreover, "[t]he purpose of the notice required by Rule 45(a)(4) is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents, things, or electronically stored information," and not to forestall the service of the subpoena. Wright & Miller § 2457.

The *Burlington Northern* test looks to whether in context, the challenged conduct "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68. A reasonable employee might well be dissuaded from making a charge of discrimination by the threat that a defendant would contact future potential employers and gratuitously inform them of the Title VII lawsuit even before an offer of employment was extended. *See Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1164 (10th Cir. 1977). But no reasonable employee should expect that the employer-defendant would simply surrender in the face of litigation. Although the threat of a vigorous defense and the service of a third party subpoena in support of that defense might well cause an employee to think carefully about whether to start litigation, at all, that threat is not the "retaliation" that Congress had in mind in crafting the retaliation provisions of Title VII. After all, a proper third-party subpoena, as much as an aggressive cross-examination that could incidentally bring out embarrassing facts, is simply a function of litigation, in which both sides get to present their case before a decision is made. As one court has stated:

> Calling a potential employer to indicate that the potential employee filed a claim against her former employer is very different from seeking discovery from a former employee's new employer, especially when there are allegations that the former employee breached a non-compete/non-disclosure agreement. While the Court is cognizant of the risk of retaliatory conduct by a new employer who learns through the discovery process that the employee brought an [Title VII] claim against a former employer, the Court cannot conclude that service of subpoenas on Plaintiff['s] new employe[r] amounts to baseless retaliation under the circumstances present here.

*Sparks v. Duncan Race Cars, Inc.*, 2014 WL 7403382, at *9 (D. Colo. Dec. 29, 2014).

The counterclaims seek damages for Plaintiff's alleged conduct after his departure from Fivesky in joining a competitor in violation of his non-compete obligations and in sharing trade secrets and confidential information in violation of his contracts with Fivesky and state and federal law. Plaintiff has neither denied that he signed the relevant agreements with Fivesky nor

that he joined CCS.  It is indisputable that an employee who has a potential discrimination claim and an employer who has a potential breach of contract or fiduciary duty claim can reach a private agreement prior to litigation, each releasing the claim against the other.  It necessarily follows that, if the employee refuses to accept the employer's offer and to release his claim in exchange for the employer's equally legitimate claim, there is "nothing in Title VII or any other anti-discrimination statute that should prevent an employer from bringing a legitimate claim against a current or former employee simply because that employee has complained about what the employee believes to be discriminatory behavior."  *Schanfield v. Sojitz Corp. of America*, 663 F. Supp. 2d 305, 342 (S.D.N.Y. 2009).

The courts in this District have repeatedly held that "[a] compulsory counterclaim is not actionable for retaliation unless it is totally baseless."  *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 474 (S.D.N.Y. 2008); *see Eng-Hatcher v. Sprint Nextel Corp.*, 2008 WL 4865194, at *4 (S.D.N.Y. Oct. 31, 2008) ("[W]here an employer seeks to amend a pleading to assert a compulsory counterclaim to avoid the risk of being foreclosed from raising the claim in a subsequent action, that conduct cannot constitute retaliation, unless the counterclaim is 'totally baseless.'") (citation omitted).[4]  Although Plaintiff seeks to distinguish those cases on the grounds that the counterclaim here is not compulsory and thus could be brought in state court or

---

[4] In *Santi v. Hot in Here, Inc.*, the court sustained a claim alleging that a compulsory counterclaim was retaliatory, holding that "[a] counterclaim, like many adverse actions, may be meritorious or not, but that determination cannot be made at the pleading stage without the benefit of discovery."  2019 WL 290145, at *5 (S.D.N.Y. Jan. 22, 2019).  It is not clear from the decision, however, whether and how the *Santi* plaintiff denied the factual allegations of the counterclaim.  To the extent that *Santi* can be read to say that a court must always permit a claim of retaliation based on a counterclaim regardless of its merit, this Court disagrees.  *See Town & Country Linen Corp. v. Ingenious Designs LLC*, 2020 WL 3472597, at *4 (S.D.N.Y. June 25, 2020) (noting that the "ultimate question" at the pleading stage for a counterclaim is "whether '[the] claim has facial plausibility'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

in a separate federal lawsuit, that is a distinction without a difference.  The underlying principle is that the employer should not be required to forfeit a potentially meritorious claim against its employee simply because the employee has brought a claim against the employer.  *See Grauer v. UBS Finan. Servs., Inc.*, 2008 WL 11398936, at *8 (S.D.N.Y. Dec. 17, 2008) ("[T]o hold otherwise would discourage employers with legitimate claims against employees alleging discrimination from bringing suit, because doing so would inevitably subject them to charges of unlawful retaliation.").  The Court need not decide whether Defendants' counterclaims here are permissive or compulsory.  The policy of Fed. R. Civ. P. 13(b) is to encourage all disputes between the parties to be asserted in one action, thereby avoiding the cost of multiple suits.  *See* Wright & Miller § 1420 ("Rule 13(b) simply encourages the parties to assert their independent and unrelated counterclaims in order to dispose of all points of controversy between the litigants in one action, thereby avoiding the cost of multiple suits.").  There is nothing in either the law of Title VII or in its logic that would require the employer either to forego its trade secret claim or to file it now in a separate court simply because the claim could be deemed to be permissive rather than compulsory.

Second, accepting all of Plaintiff's allegations as true, they fail to state a claim that Defendants' actions were "the result of any discriminatory and retaliatory intent" and thus fail the causation element.  *Nassar*, 570 U.S. at 359.  This is not a case such as those cited in Plaintiff's brief in which a defendant initiated an investigation of an employee's pre-termination conduct on the whim that the employee would complain of discrimination and then held a potential claim in reserve, as a threat to deter the employee or others from lodging their complaint, or filed a lawsuit immediately after an administrative complaint and before a federal court lawsuit.  *See, e.g.*, *Spencer v. Int'l Shoppes, Inc.*, 902 F. Supp. 2d 287 (E.D.N.Y. Sept. 28,

2012) (following plaintiff's filing of an administrative complaint alleging age and race discrimination and two days after the filing of a supplemental administrative complaint alleging retaliatory termination, defendant filed state court action alleging defamation and related torts arising from plaintiff's employment); *Yanklevitz v. Cornell University*, 1996 WL 447749, at *6 (S.D.N.Y. Aug. 7, 1996) (finding defendants "brought their claim against plaintiff after plaintiff initiated this lawsuit even though defendants had prior opportunity to bring their claim" and "plaintiff could prove a set of facts which establishes a causal connection between plaintiff's lawsuit and defendants' counterclaim thereby satisfying the third prong of the retaliation test"); *Kreinik v. Showbran Photo, Inc.*, 2003 WL 22339268, at *7 (S.D.N.Y. Oct. 10, 2003) (counterclaims went "beyond" a "simple breach of contract and related claims" to impact plaintiff's "personal and professional reputation and [] his ongoing efforts to create and maintain his own business").[5]

On its face and as pleaded, the counterclaims arise from Plaintiff's conduct *after* he made his complaints and *after* he was terminated.  They seek to deter Plaintiff not from making a complaint of discrimination but from working for a competitor and misappropriating for that

---

[5] In *Leary v. Fawaz Al-Mubaraki*, 2019 WL 4805849, at *3-4, *8 (S.D.N.Y. Sept. 30, 2019), the court sustained a retaliation claim based on a compulsory counterclaim of breach of fiduciary duty and breach of contract because (1) defendant "had the opportunity to bring its claims against [plaintiff] well before he filed the complaint in this action" (2) there was a "short period of time between the date on which [p]laintiff filed his complaint and the date when [defendant] asserted its counterclaims"; and (3) the counterclaims failed to state a claim for relief because defendant failed to plausibly allege that plaintiff used its confidential information to compete against it, to divert defendant's business opportunities, or to engage in financially advantageous self-dealing and failed to plausibly alleged that it suffered damages.  In *Bentivegna v. People's United Bank*, 2017 WL 4277149, at * 4(E.D.N.Y. Sept. 25, 2017), the court sustained a retaliation claim where, after plaintiff filed an administrative complaint but before defendant terminated her employment or plaintiff filed a lawsuit, the defendant's chief executive officer had directed that a search be conducted of plaintiff's emails because of "the cost we have incurred defending her charges" and because plaintiff had "cost us a lot of management time and expense and we need to be compensated."

competitor the trade secrets and confidential information with which Plaintiff was entrusted as an employee of Fivesky. *See Beltran v. Brentwood North Healthcare Center, LLC*, 426 F. Supp. 2d 827, 834 (N.D. Ill. 2006) ("[U]nlike initiating litigation against an employee, filing a counterclaim will not chill plaintiffs from exercising and enforcing their statutory rights because by the time the employer files its counterclaims, plaintiffs have already made their charges and initiated the lawsuit."). Defendants' counterclaims were not intended to deter Plaintiff or others from making a complaint of discrimination. Here, "the employer may not have brought the counterclaims without first being sued." *Rosas v. Balter Sales Co. Inc.*, 2015 WL 12915807, at *12 (S.D.N.Y. Mar. 30, 2015). "When an employee initiates the litigation, a counterclaim cannot dissuade the employee from making a charge of discrimination, by filing a lawsuit, because the charge necessarily must be made before the employer can file a counterclaim." *Sparks*, 2014 WL 7403382, at *7 (quoting *Robinson v. Dean Foods Co.*, 2009 WL 2382764, at *4 (D. Colo. July 30, 2009)). Indeed, further separating both the counterclaims and the subpoena from the making of Plaintiff's complaint, they were both served only *after* the Court denied in part Defendants' motion to dismiss and thereby forced defendants to defend themselves. They were not intended to prevent Plaintiff from making his complaint but only to permit Defendants to defend themselves once that complaint had been made and sustained.[6]

---

[6] The Court also rejects Plaintiff's further proposed amendment, set forth in its reply brief, that Defendants retaliated against him by hiring a private investigator to investigate potential defenses after this lawsuit was filed. Dkt. No. 50 at 2-3. In the first instance, it is improper to seek new relief on reply. The Court rejects the proposed amendment for that reason alone. Second, although the Court does not doubt that "being secretly surveilled for eight days [or some other period] (and so knowing that the employer was keeping an eye on him) 'might well' dissuade a reasonable employee from exercising his right to complain about discrimination," *Mendez v. Sherwood Hotel & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010); *see also Bind v. City of New York*, 2011 WL 4542897, at *18 (S.D.N.Y. Sept. 30, 2011) (holding that surveillance of employee can constitute an adverse employment action even if the employee is unaware of the surveillance), the employer's conduct alleged here, which was part

B.      **Proposed Wrongful Termination Claim**

Plaintiff also moves the Court to amend the complaint to add a claim for wrongful

termination in addition to Plaintiff's previously asserted constructive discharge claim.

The proposed amended complaint would add a claim that on March 25, 2019, Plaintiff,

through his counsel, mailed Defendants a draft complaint and claim letter alleging discrimination

and a hostile work environment at Fivesky.  Dkt. No. 43, Ex. E ¶ 159.  At the time, Plaintiff was

on medical leave because he felt unable to return to work due to the hostile discrimination and

retaliation he allegedly faced.  *Id.* ¶ 151.  The amendment alleges that upon Defendants' receipt

of the complaint on March 27, 2019, Plaintiff was locked out of Fivesky's systems and that, by

letter dated April 2, 2019, Defendants' counsel stated to Plaintiff's counsel: "[B]y virtue of your

March 25, 2019 letter it is clear that Sherman has terminated his relationship with Fivesky."  *Id.*

¶¶ 161-62, ¶¶ 169-70.  Plaintiff alleges that it was inaccurate that Plaintiff was terminating his

relationship and that, as such Fivesky terminated Plaintiff on April 2, 2019.

Plaintiff has failed to establish good cause for filing this amendment out of time.  Based

on Plaintiff's own allegations, he had all of the information to allege these facts in April 2019.

There is no justification for waiting until August 2020, after the deadline for amendments, to

raise them.[7]

---

of the litigation of the claim, is not meaningfully different from that held insufficient to state a
claim for retaliation in *Steffes*, 144 F.3d at 1073-74.

[7] Indeed, Defendants have submitted evidence that Plaintiff first communicated his claims that he
was constructively discharged on March 29, 2019.  *See* Markowitz Reply Decl. ¶ 7; *id.*, Ex. A.
On April 3, 2019, Defendants told Plaintiff they deemed this assertion of constructive discharge
to be his resignation.  *Id.* ¶ 11; *id.*, Ex. B.  Plaintiff did not then object or claim he was
wrongfully terminated.  Markowitz Reply Decl. ¶ 12.  Nor did he claim he was terminated in his
EEOC charge which asserted that he was constructively discharged.  Dkt. No. 47 at 6-7; Dkt. No.
9-2 (EEOC charge).

**CONCLUSION**

Defendants' motion to amend is GRANTED.  Dkt. No. 37.  Plaintiff's motion to amend is DENIED.  Dkt. No. 42.  The motion to quash the subpoena is DENIED.  Dkt. No. 39.

The Clerk of Court is respectfully directed to close Dkt. Nos. 37, 39, 42.

SO ORDERED.

Dated: August 31, 2020
      New York, New York                               LEWIS J. LIMAN
                                                United States District Judge